UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ASSAN ALUMINYUM SANAYI VE TICARET A.S., <br><br>*Plaintiff,*<br><br>v.<br><br>THE UNITED STATES,<br><br>*Defendant.* | Court No. 21-00616 |

# COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Assan Aluminyum Sanayi ve Ticaret A.S. ("Assan" or "Plaintiff"), by and through its undersigned attorneys, alleges and states as follows:

## ADMINISTRATIVE DECISION TO BE REVIEWED

1.  This is an appeal from the final determination in the sales at less-than-fair-value ("LTFV") investigation of *Certain Aluminum Foil from the Republic of Turkey* ("Aluminum Foil from Turkey"). The period of investigation ("POI") is July 1, 2019 through June 30, 2020.

2.  On September 23, 2021, the U.S. Department of Commerce, International Trade Administration, Enforcement and Compliance ("Commerce") published its final antidumping ("AD") duty determination finding that Aluminum Foil from Turkey is being or is likely being sold at less than fair value ("LTFV"). *Certain Aluminum Foil From the Republic of Turkey: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 52880 (Dep't Commerce September 23, 2021) ("*Final AD Determination*"). Commerce's factual and legal conclusions underlying the *Final AD Determination* are set forth in its Issues and Decision Memorandum. Memorandum from A. Villanueva to J. Maeder, Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation

1

of Certain Aluminum Foil from the Republic of Turkey (Sept. 23 2021) ("*Final I&D Memo*") (available at https://access.trade.gov/Resources/frn/summary/turkey/2021-20534-1.pdf).

3. On November 12, 2021, Commerce published the AD duty order. *Certain Aluminum Foil From the Republic of Armenia, Brazil, the Sultanate of Oman, the Russian Federation, and the Republic of Turkey: Antidumping Duty Orders*, 86 Fed. Reg. 62790 (Nov. 12, 2021) ("*AD Order*").

## JURISDICTION

4. Plaintiff brings this action pursuant to Sections 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(iii) of the Tariff Act of 1930, *as amended* (the "Act"), 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and 1516a(a)(2)(B)(iii). Plaintiff contests Commerce's *Final AD Determination*, specifically as applied to Plaintiff. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

## STANDING

5. Assan is an interested party to the proceeding under Sections 516A(f)(3) and 771(9)(A) of the Act, codified at 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(A), respectively. Assan is a foreign manufacturer and exporter of the subject merchandise. Specifically, Assan participated actively at all stages of the investigation by submitting questionnaire responses and briefs.

6. Assan, therefore, has standing to bring this action under 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

7. This Complaint is being filed concurrently with the summons initiating this action. The summons was timely filed on December 9, 2021 (ECF No. 1), within thirty (30) days of Commerce's publication of the *AD Order*. *See* 86 Fed. Reg. at 62790. In accordance with

USCIT R. 3(a)(2), 5(e) and 6(a), and pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and 28 U.S.C. § 2636(c), Plaintiff's Complaint is timely.

## **STANDARD OF REVIEW**

8. This Court must remand any administrative determination by Commerce which is "unsupported by substantial evidence on the record" as a whole, or is "otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

9. When reviewing whether Commerce's actions are unsupported by substantial evidence, the Court assesses whether the agency action is "unreasonable" given the record as a whole. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006). Substantial evidence represents "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *DuPont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

10. When reviewing Commerce's statutory interpretations, the Court applies the two-part framework set forth in the Supreme Court's opinion in *Chevron*. *Union Steel v. United States*, 713 F.3d 1101, 1106–07 (Fed. Cir. 2013) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 842–43 (1984)). Under *Chevron*, to determine whether an agency's interpretation of the statute is entitled to deference, the Court conducts a two-part test. Under the first prong of this test, where Congress has spoken directly to the question at issue, the Court and the agency must give effect to the unambiguously expressed intent of Congress. *See* 467 U.S. at 842–43. If, however, the statute is vague or silent on an issue, the Court upholds the agency's interpretation provided that the interpretation is reasonable. *See id*. at 843.

11. This Court has found Commerce's determinations unlawful "where Commerce has failed to carry out its duties properly, relied on inadequate facts or reasoning, or failed to provide an adequate basis for its conclusions." *Rhone-Poulenc, Inc. v. United States*, 20 CIT 573,

3

575, 927 F. Supp. 451, 454 (1996); *see also Asociacion Colombiana de Exportadores de Flores, v. United States*, 22 CIT 173, 185, 6 F. Supp. 2d 865, 880 (1998).

**STATEMENT OF FACTS**

12. Commerce initiated the antidumping duty investigation of Aluminum Foil from Turkey pursuant to Section 732 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1673a. *See Certain Aluminum Foil from the Republic of Armenia, Brazil, the Sultanate of Oman, the Russian Federation, and the Republic of Turkey: Initiation of Less-Than-Fair-Value Investigations,* 85 FR 67711 (October 26, 2020) ("Initiation Notice").

13. On November 13, 2020, the United States International Trade Commission ("ITC") preliminarily determined that there is a reasonable indication that imports of Aluminum Foil from Turkey are materially injuring the U.S. industry. *See Aluminum Foil From Armenia, Brazil, Russia, and Turkey,* 85 Fed. Reg. 73748 (Int'l Trade Comm'n November 19, 2020).

14. Assan was a mandatory respondent in Commerce's investigation and participated throughout the proceeding through the filing of questionnaire responses, verification of the data submitted, and submission of legal arguments. On December 22, 2020, Assan submitted its response to Section A of Commerce's antidumping duty questionnaire. *See* Assan Aluminyum Sanayi ve Ticaret A.S. and Kibar Dis Ticaret A.S.'s Response to Section A Questionnaire (December 22, 2020). On January 14, 2021, Assan submitted its responses to Sections B and C of the questionnaire. *See* Assan Aluminyum Sanayi ve Ticaret A.S. and Kibar Dis Ticaret A.S.'s Response to Section B Questionnaire (January 14, 2020); Assan Aluminyum Sanayi ve Ticaret A.S. and Kibar Dis Ticaret A.S.'s Response to Section C Questionnaire (January 14, 2021). On January 19, 2021, Assan submitted its response to Section D of the questionnaire. *See* Assan

Aluminyum Sanayi ve Ticaret A.S. and Kibar Dis Ticaret A.S.'s Response to Section D Questionnaire (January 19, 2021).

15. Assan also filed responses to the thirteen supplemental questionnaires issued by Commerce. *See e.g.,* Assan Aluminyum Sanayi ve Ticaret A.S. and Kibar Dis Ticaret A.S.'s Response to Supplemental Section A Questionnaire (January 15, 2021); Assan Aluminyum Sanayi ve Ticaret A.S. and Kibar Dis Ticaret A.S.'s Response to Section A Second Supplemental Questionnaire (February 11, 2021); Assan Aluminyum Sanayi ve Ticaret A.S. and Kibar Dis Ticaret A.S.'s Response to Third Supplemental Section D Questionnaire (February 26, 2021); Assan Aluminyum Sanayi ve Ticaret A.S. and Kibar Dis Ticaret A.S.'s Response to the Sections B and C Supplemental Questionnaire (March 16, 2021); Assan Aluminyum Sanayi ve Ticaret A.S. and Kibar Dis Ticaret A.S.'s Response to the March 8, 2021 Section D Second Supplemental Questionnaire (March 29, 2021); Assan Aluminyum Sanayi ve Ticaret A.S.'s Response to the March 15, 2021 Section D Third Supplemental Questionnaire (March 29, 2021); Assan Aluminyum Sanayi ve Ticaret A.S. and Kibar Dis Ticaret A.S.'s Response to the March 12, 2021 Section C Second Supplemental Questionnaire (March 31, 2021); Assan Aluminyum Sanayi ve Ticaret A.S. and Kibar Dis Ticaret A.S.'s Response to the March 12, 2021 Section C Second Supplemental Questionnaire (Questions 21-28) (April 2, 2021); Assan Aluminyum Sanayi ve Ticaret A.S. and Kibar Dis Ticaret A.S.'s Response to the March 31, 2021 Sections B-D Supplemental Questionnaire (Questions 1-5) (April 7, 2021); Assan Aluminyum Sanayi ve Ticaret A.S. and Kibar Dis Ticaret A.S.'s Response to Question 6 of the March 31, 2021 Sections B and C Supplemental Questionnaire (April 12, 2021); Assan Aluminyum Sanayi ve Ticaret A.S. and Kibar Dis Ticaret A.S.'s Response to Questions 1 – 4 of the April 9, 2021 Section D Fourth Supplemental Questionnaire (April 13, 2021); Assan Aluminyum Sanayi ve Ticaret A.S. and

Kibar Dis Ticaret A.S.'s Response to Questions 5 through 10 of the April 9, 2021 Section D Fourth Supplemental Questionnaire (April 15, 2021); Assan Aluminyum Sanayi ve Ticaret A.S. and Kibar Dis Ticaret A.S.'s Response to Questions 2a, 2b, 2c, 2e and 4 of the May 4, 2021 Section D Fifth Supplemental Questionnaire (May 14, 2021); Assan Aluminyum Sanayi ve Ticaret A.S. and Kibar Dis Ticaret A.S.'s Response to Questions 1, 2d, and 3 of the May 4, 2021 Section D Fifth Supplemental Questionnaire (May 17, 2021); Assan Aluminyum Sanayi ve Ticaret A.S. and Kibar Dis Ticaret A.S.'s Response to the May 10, 2021, Section C Third Supplemental Questionnaire (May 24, 2021); and Assan Aluminyum Sanayi ve Ticaret A.S. and Kibar Dis Ticaret A.S.'s Response to the June 15, 2021 Section D Sixth Supplemental Questionnaire (June 21, 2021).

16. Commerce published its negative preliminary determination that Aluminum Foil from Turkey is not being, or is not likely to be, sold in the United States at less than fair value ("LTFV") on May 4, 2021. *Certain Aluminum Foil From the Republic of Turkey: Preliminary Negative Determination of Sales at Less Than Fair Value, Postponement of Final Determination*, 86 Fed. Reg. 23686 (May 4, 2021) ("*Preliminary Determination*"). Because Commerce preliminary determined that Assan did not make sales of aluminum foil at LTFV, Assan was assigned a preliminary weighted-average dumping margin of 0.00 percent. *Preliminary Determination*, 86 Fed. Reg. at 23687. Commerce's factual and legal conclusions underlying its preliminary determination are set forth in the Preliminary Decision Memorandum. Memorandum from J. Maeder to C. March, re: Decision Memorandum for the Preliminary Determination in the Less-Than-Fair-Value Investigation of Certain Aluminum Foil from the Republic of Turkey (April 27, 2021) ("*Preliminary Decision Memo*"), available at https://access.trade.gov/Resources/frn/summary/turkey/2021-09323-1.pdf.

17. On July 20, 2021, Assan submitted its response to Commerce's request for documents in lieu of verification. Assan Aluminyum Sanayi ve Ticaret A.S., Kibar Dis Ticaret A.S. and Ispak Esnek Ambalaj Sanayi A.S.'s Response to the Questionnaire in Lieu of Verification. (July 20, 2021) ("Verification Response").

18. On August 2, 2021, Assan filed a case brief. Assan Aluminyum Sanayi ve Ticaret A.S., Kibar Dis Ticaret A.S. and Ispak Esnek Ambalaj Sanayi A.S.'s Case Brief (August 2, 2021) ("Case Br."). In its case brief, Assan commented on, amongst other things: Commerce's weight averaging of all raw material premium costs during the POI in its cost calculation, rather than specific LME premium costs reported by Assan; Commerce's deduction of the special 10 percent additional Section 232 tariffs on imports of aluminum from Assan's U.S. price; and Commerce's failure to grant Assan the full duty drawback adjustment to which it was entitled. Case Br. at 3-9 (LME premium costs), 9-21 (deduction of Section 232 tariffs), and 30-32 (duty drawback adjustment). Regarding raw material premium costs (DIRMATMP), Assan addressed Commerce's use of weight-averaged cost for both the LME and metal premium portions of metal costs, which introduces distortions in the cost calculations because it ignores fundamental cost differences related to yield loss. *Id.* at 3-9. With regards to the Section 232 tariffs, Assan explained that the special tariffs are remedial, temporary, and were implemented under Congress's delegation of authority, and that, as such, their deduction from U.S. price imposes a double remedy. *Id.* at 9-21. Finally, Assan challenged Commerce's duty drawback methodology, which incorrectly divided the exempted duty amount by total exports to the United States to calculate the per unit duty drawback adjustment applied to Assan's U.S. sales. *Id.* at 30-32.

19. On August 12, 2021, Assan filed a rebuttal brief. Assan Aluminyum Sanayi ve Ticaret A.S., Kibar Dis Ticaret A.S. and Ispak Esnek Ambalaj Sanayi A.S.'s Rebuttal Case Brief

(August 12, 2021) ("Rebuttal Br."). In its rebuttal brief, Assan argued, amongst other things, that certain head office management fees and support services expenses, which were incurred in Turkey, relate to overall group management, and do not support US sales or economic activity, should be excluded from Commerce's calculation of indirect selling expenses (INDIRSU). Rebuttal Br. at 3-13.

20. On September 23, 2021, Commerce published its *Final AD Determination* finding that Aluminum Foil from Turkey was being sold at less-than-fair-value and calculating a final weighted-average dumping margin for Assan of 2.28 percent. 86 Fed. Reg. at 52881. Commerce's calculations underlying its *Final AD Determination* are set forth in the Memorandum from B. Hansen to The File, re Final Determination Analysis Memorandum for the Assan Single Entity (Sept. 16, 2021) ("Final Analysis Memo").

21. In the *Final AD Determination*, Commerce continued to reject Assan's DIRMATMP reporting, which is used in its books and records and consistent with Turkish GAAP, in favor of a weight average the raw material aluminum premium costs for all CONNUMs, regardless of yield loss or raw material requirements. *Final I&D Memo* at 33-35 (Cmt. 8). Commerce also continued to treat the Section 232 tariffs paid by Assan as ordinary customs duties, distinct from antidumping, section 201 safeguards, and other "special" tariffs, and thus deducted them from U.S. price. *Id.* at 20-21 (Cmt. 5). Commerce determined that Assan met its two-prong test for a duty drawback adjustment, but continued to divide the amount of exempted duties under the closed import processing certificates (IPCs) by Assan's total exports to the U.S., rather than exports under the closed IPCs, in its calculation of the per unit drawback adjustment applied to Assan's U.S. sales. *Id.* at 28-29 (Cmt. 7). Commerce reduced the drawback benefit by offsetting the amount of certain filing penalties incurred by Assan in its calculation. *Id.*

Finally, Commerce revised its calculation to treat certain management fees as a U.S. indirect selling expense (ISE) by revising the ISE ratio to include the fees and making a corresponding reduction to Assan's reported G&A expenses. *Id.* at 10-11 (Cmt. 2).

22. Commerce published the *AD Order* on November 12, 2021. 86 Fed. Reg. at 62790.

23. The *Final AD Determination*, upon which the *AD Order* was based, is unsupported by substantial evidence on the record and is otherwise not in accordance with law with respect to the matters set forth in the following counts.

## STATEMENT OF CLAIMS

### COUNT I

24. The facts and allegations contained in paragraphs 1 through 23 are restated and incorporated herein by reference.

25. Commerce should not weight average the reported DIRMATMP costs for all CONNUMs because doing so ignores fundamental cost differences related to yield loss for specific CONNUMS and productions runs, introducing distortions in the cost calculations. Commerce should have instead relied on the metal premium element in DIRMATMP originally provided by Assan, as it is the method Assan uses in its books and records, is a more accurate calculation of relative costs, and is consistent with Turkish GAAP. Commerce's decision to reject Assan's actual recorded costs in favor of an average raw material premium, which unreasonably results in all subject merchandise having the same unit metal cost, is unsupported by substantial evidence and is otherwise not in accordance with law.

AFDOCS/25034894.3

## COUNT II

26. The facts and allegations contained in paragraphs 1 through 25 are restated and incorporated herein by reference.

27. Commerce should not deduct Section 232 tariffs paid by Assan from the export price of its U.S. sales because the Section 232 tariffs are "special" tariffs imposed pursuant to a specific congressional delegation of tariff making authority to the executive branch, rather than ordinary U.S. import duties within the meaning of the antidumping statute. The Section 232 tariffs are remedial, temporary, and treated differently than normal customs duties in the Harmonized Tariff Schedule, and their deduction from U.S. price in the *Final AD Determination* imposes a double-remedy that is contrary to the statute. Commerce's determination to treat the special Section 232 tariffs as ordinary customs duties and deduct the full amount of tariffs paid from Assan's export price is thus unsupported by substantial evidence and is otherwise not in accordance with law.

## COUNT III

28. The facts and allegations contained in paragraphs 1 through 27 are restated and incorporated herein by reference.

29. Commerce's decision to limit the full duty drawback adjustment to which Assan was entitled by dividing the amount of import duties rebated or not collected by reason of exportation by total exports to the United States and applying that per unit adjustment to all of Assan's U.S. sales, is contrary to law and unsupported by substantial evidence on the record. Specifically, 19 U.S.C. §1677a(c)(1)(B) requires that U.S price be increased by "the amount of any import duties imposed by the country of exportation *which have been rebated, or which have not been collected*, by reason of the exportation of the subject merchandise to the United States" (emphasis added). Consistent with the plain language of the statute, and Commerce's

longstanding two-prong test for determining whether a drawback adjustment may be granted, Assan was entitled to a full drawback adjustment to U.S. price for the amount of the import duty rebated or not collected on its export sales. The allocation of Assan's exempted import duties over all U.S. exports resulted in an inconsistent numerator and denominator in Commerce's calculation, which significantly limited the amount of per-unit duty drawback being added to U.S. price. Instead, consistent with other recent cases involving the Turkish IPR, Commerce should have calculated the per unit duty drawback adjustment applied to Assan's U.S. sales by allocating the amount of exempted duties over the total quantity of exports under the closed IPCs.

30. Commerce's reduction of the drawback benefit by the amount of filing penalties incurred by Assan is likewise contrary to law and unsupported by substantial evidence on the record. An offset of the full duty drawback benefit to which Assan is statutorily entitled by the amount of filing penalties has no support in U.S. dumping law or practice. There is nothing in the drawback statute (19 U.S.C. §1677a(c)(1)(B)), nor Commerce's well-established two-prong test for determining eligibility, that would authorize an offset to the drawback adjustment for late penalties paid.

31. Commerce's duty drawback methodology in the *Final AD Determination*, which limits Assan's duty drawback adjustment in a manner not contemplated by the statute, is thus unsupported by substantial evidence and is otherwise not in accordance with law.

**COUNT IV**

32. The facts and allegations contained in paragraphs 1 through 31 are restated and incorporated herein by reference.

33. Commerce's treatment of certain management fees incurred by Assan as indirect selling expenses, and its inclusion of those expenses in INDIRSU with a corresponding offset to

11

Assan's reported G&A expenses is contrary to law and unsupported by substantial evidence on the record. The management fee charges were incurred by the parent company in Turkey for overall group support (*i.e.* head office administrative activities to manage group operations) which did not relate to sales or economic activities occurring in the United States. Deduction of these expenses is contrary to Commerce's long-standing policy to only deduct expenses associated with sales economic activity in the United States. Because only elements of the management fee related to U.S. sales economic activity should be deducted, Commerce's inclusion of all management fee charges in its calculation of INDIRSU is unsupported by substantial evidence and is otherwise not in accordance with law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to:

(a)  Hold that Commerce's *Final AD Determination* was not in accordance with law or unsupported by substantial record evidence with respect to the claims advanced by Plaintiff in this Complaint;

(b)  Remand the *Final AD Determination* to Commerce for determination consistent with the opinion of this Court; and

(c)  Grant such additional relief as the Court may deem just and proper.


/s/ Leah N. Scarpelli
Leah N. Scarpelli
Matthew M. Nolan
Nancy A. Noonan]
Jessica R. DiPietro
John A. Gurtunca

Arent Fox LLP
1717 K Street, N.W.
Washington, DC 20006

AFDOCS/25034894.3

Phone: (202) 715-8403

*Counsel to Assan Aluminyum Sanayi ve Ticaret A.S.*

Dated: January 4, 2022