## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE

| | |
|---|---|
| ASSAN ALUMINYUM SANAYI VE TICARET A.S., )  )  ) | |
| *Plaintiff,* ) | **Public Document** |
| v. ) | |
| THE UNITED STATES, ) | Consol. Court No. 21-00616 |
| *Defendant,* )  ) | |
| ALUMINUM ASSOCIATION TRADE ENFORCEMENT WORKING GROUP AND ITS INDIVIDUAL MEMBERS, et al., )  )  ) | |
| *Defendant-Intervenors.* )  ) | |

## SUPPLEMENTAL REPLY BRIEF
## OF ASSAN ALUMINYUM SANAYI VE TICARET A.S. AND MOTION FOR
## EXPEDITED TREATMENT

Leah N. Scarpelli
Matthew M. Nolan


ARENTFOX SCHIFF LLP
1717 K Street, NW
Washington, D.C. 20006
Tel: (202) 857-6013
Fax: (202) 857-6395
Email: leah.scarpelli@afslaw.com

December 22, 2023

**TABLE OF CONTENTS**

**Page**

I.  COMMERCE'S PER UNIT DUTY DRAWBACK CALCULATION
    CONFLICTS WITH RECENT PRECEDENT.................................................................. 2

II. COMMERCE HAS NOT ADEQUATELY EXPLAINED THE CHANGE TO
    ITS DUTY DRAWBACK CALCULATION.................................................................. 4

III. COMMERCE'S REQUEST FOR A VOLUNTARY REMAND SHOULD BE
    GRANTED AND GIVEN EXPEDITED TREATMENT ................................................. 8

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Saha Thai Steel Pipe (Public) Co., Ltd. v. United States*,
    635 F.3d 1335 ..................................................................................................................7

*Tibbi Gazlar Istihsal Endustrisi, A.S. v. United States*,
    415 F.Supp.3d 1195 (Ct. Int'l Trade 2019) ...................................................................7

*Ticaret A.S. v. United States*,
    222 F. Supp. 3d 1255 (Ct. Int'l Trade 2017) .................................................................7

*Uttam Galva Steels Ltd. v. United States*,
    311 F. Supp. 3d 1345 (Ct. Int'l Trade 2018) .................................................................2

*Uttam Galva Steels Ltd. v. United States*,
    997 F. 3d 1192 (Fed. Cir. 2021).........................................................................2, 5, 6, 8

*British Steel plc v. United States*,
    20 CIT 955, 936 F. Supp. 1053 (1996) .......................................................................10

**Federal Statutes**

19 U.S.C. § 1673b(b)(3) .........................................................................................................9

19 U.S.C. § 1677a(c)(1)(B)...............................................................................................5, 6

**Rules**

Rule 3(g) ............................................................................................................................1, 9

Rule 54(b) ..............................................................................................................................9

**Other Authorities**

Issues and Decision Memorandum for the Final Results of the Administrative
    Review of the Antidumping Duty Order on Common Alloy Aluminum Sheet
    from Turkey; 2020-2022 (Nov. 3, 2023) ...........................................................5, 6, 8

*Light-Walled Rectangular Pipe and Tube From Turkey*, 69 Fed. Reg. 53675
    (Dep't Commerce Sept. 2, 2004) .................................................................................7

*Welded Line Pipe From the Republic of Turkey*, 80 Fed. Reg. 61362
    (Dep't Commerce October 13, 2015) ...........................................................................7

**UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE**

| | |
|---|---|
| ASSAN ALUMINYUM SANAYI VE TICARET A.S., | ) ) ) |
| *Plaintiff,* | ) **Public Document** ) |
| v. | ) ) |
| THE UNITED STATES, | ) Consol. Court No. 21-00616 ) |
| *Defendant,* | ) ) |
| ALUMINUM ASSOCIATION TRADE ENFORCEMENT WORKING GROUP AND ITS INDIVIDUAL MEMBERS, et al., | ) ) ) ) |
| *Defendant-Intervenors.* | ) ) ) |

**ASSAN'S SUPPLEMENTAL REPLY BRIEF AND
MOTION FOR EXPEDITED TREATMENT**

Plaintiff Assan Aluminyum Sanayi ve Ticaret A.S. ("Assan"), respectfully submits this supplemental reply in response to Defendant's, ECF 67 ("Def. Supp. Br."), and Petitioners' Supplemental Briefs, ECF 70 & 71 ("Pet. Supp. Br."). Pursuant to the Court's Minute Order dated November 28, 2023, ECF 68, Assan further responds to the Government's Motion for Voluntary Remand as part of this supplemental reply. *Id.*

For the reasons that follow, Assan continues to oppose Commerce's duty drawback calculation, which is inconsistent with its practice in other cases involving the Turkish drawback system and Assan specifically, and supports the Government's motion that the issue be remanded to Commerce for further explanation. Def. Supp. Br. at 1-2. Assan further requests that Commerce's motion for partial voluntary remand be granted expedited consideration under Rule 3(g) given the dispositive nature of the duty drawback issue in this case.

-1-

I.    **COMMERCE'S PER UNIT DUTY DRAWBACK CALCULATION CONFLICTS
WITH RECENT PRECEDENT**

There is no factual dispute that Commerce has used a different methodology to calculate
the per unit drawback adjustment in this case than in other recent cases involving the Turkish
drawback system. Assan Supp. Br. at 14, ECF No. 64. As Commerce itself now acknowledges,
there are "several agency decisions in which Commerce applied the methodology proposed by
Assan," and its use of a different methodology here results in "conflicting methodologies
employed by Commerce." DOJ Br. at 1, 5-6.

Nevertheless, Petitioners maintain that Commerce's calculation in this case comports
with *Uttam Galva Steels Ltd. v. United States*, 997 F. 3d 1192 (Fed. Cir. 2021), a case involving
imports entered in 2014-2015 and in which the numerator of Commerce's drawback calculation
was all "exempted and rebated duties." *Uttam Galva Steels Ltd. v. United States*, 311 F. Supp. 3d
1345, 1348 (Ct. Int'l Trade 2018); Assan Supp. Br. at 7. Citing statements from the hearing
without context, Petitioners' attempt to argue that Commerce's drawback calculation has
remained stagnant since 2014. *Compare* Pet. Br. at 1-2, *with* Assan Supp. Br. at 1-6. But as
Petitioners' counsel has admitted, Commerce's "practice changed" since *Uttam Galva* such that
"{t}he ratio is different." Tr. at 64.

Likewise, Petitioners misleading position that "the current formulation of Commerce's
practice has been sustained as reasonable by the U.S. Court of International Trade" is
contradicted by the record. Pet. Br. at 4.[1] As Petitioners' counsel ultimately, albeit reluctantly,
acknowledged, "Commerce relied on the methodology that Assan is proposing" in other recent

---

[1] We note that Petitioners' provide no citation for this definitive statement, nor could they. Use of the drawback
methodology applied by Commerce in this proceeding has never been upheld by the Court of International Trade.
This fact was tacitly recognized by Defendant in requesting "partial remand to Commerce for further explanation
and consideration of the ratio used for the duty drawback adjustment in this proceeding." DOJ Br. at 2.

cases involving the Turkish drawback system. Tr. at 68-69. The fact that Petitioners' have appealed Commerce's methodology does not negate the clear inconsistency in Commerce's recent drawback methodology, nor provide support for its assertion that the conflict has been "sustained as reasonable" by this Court. Pet. Br. at 4. In their appeal of Commerce's remand results in the case involving *Common Alloy Aluminum Sheet from Turkey*, Petitioners now have the burden of showing the drawback methodology Assan advocates for here is unlawful. The mere existence of their appeal, without having met that burden, cannot be cited as conclusive support for Commerce's disparate methodology in this case. *Id.* at 5-6. Indeed, as Commerce has conceded, it must provide an explanation for the "decisions {that} conflict with Commerce's methodology in this case." DOJ Br. at 5.

Finally, Petitioners' insistence that "Assan's real dispute is with the duty drawback numerator relied on by Commerce," Pet. Br. at 3, misses the point. Contrary to Petitioners' claims, the dispute in this case is not Commerce's duty drawback numerator, but the corresponding change to the denominator use of that numerator requires. Assan Supp. Br. at 7-8. Though Petitioners' work hard to complicate and confuse the issue, this simple mathematical concept has been repeatedly recognized by Commerce: in ratio calculations, "{t}he denominator must correspond with the numerator," with Commerce "first look{ing} to the . . . numerator to determine what is appropriate for the denominator." Appx007628. Here, the numerator selected by Commerce is duties exempted under a closed certificate. The corresponding denominator must therefore necessarily consist of sales under that same closed certificate.

Identification of this mathematical conflict is not a nefarious "attempt to reverse Commerce's court-approved methodology that relies on 'closed' inward processing certificates," as Petitioners claim. Pet. Br. at 4. Again, Commerce's methodology in this case cannot be

considered "court-approved" as it has not been previously considered by the Court; in all other recent cases involving Turkish drawback, including the appeal on *Common Alloy Aluminum Sheet from Turkey*, Commerce has used a different methodology where the numerator/denominator inconsistency at issue here did not exist. Assan Supp. Br. at 13.

## II.   COMMERCE HAS NOT ADEQUATELY EXPLAINED THE CHANGE TO ITS DUTY DRAWBACK CALCULATION

As it acknowledged in its request for a voluntary remand, Commerce has not adequately explained the "conflicting methodologies employed" in its duty drawback calculation in this case, and requires "the opportunity to reconsider its previous position regarding the applied ratio in its duty drawback adjustment{.}" DOJ Br. at 5-6. Assan agrees.

Though Commerce previously claimed to have explained the factual basis for its per unit drawback calculation, the three "explanations" provided refer to Commerce's application of the calculated per unit adjustment to all sales in the U.S. sales data, rather than the calculation of the adjustment itself. Appx007644-45. The explanations provided do not adequately explain Commerce's use of total exports as the denominator, nor the resulting inconsistency with its per unit calculation in other recent cases. Assan Supp. Br. at 14-15.

By contrast, Commerce *has* repeatedly and thoroughly explained its rationale for rejecting Petitioners' methodology. In fact, each of the points raised by Petitioners' in arguing that Assan's proposed duty drawback methodology in this case is unlawful has been considered and rejected by Commerce is other proceedings.

First, Petitioners allege that Commerce's calculation of the per unit drawback adjustment in *Common Alloy Aluminum Sheet*, *Steel Concrete Reinforcing Bar*, and other recent cases includes "significant exports of non-subject" merchandise and "significant exports of merchandise to countries other than the United States." Pet. Br. at 6. As in these previous cases,

however, Petitioners' misunderstand Commerce's *per-unit* drawback calculation. The fact that a

certificate includes non-subject sales or exports to destinations other than the United States is

irrelevant because the resulting per-unit adjustment is applied only to subject U.S. sales, *i.e.*

subject merchandise exported to the United States. *See* 19 U.S.C. § 1677a(c)(1)(B). As

Commerce has explained, "the duty drawback provision, Commerce's regulations, and

Commerce's practice do not require use of the imported input in the production of the exported

subject merchandise as a condition to receiving a duty drawback adjustment." Memorandum

from J. Maeder to A. Elouaradia re: Issues and Decision Memorandum for the Final Results of

the Administrative Review of the Antidumping Duty Order on Common Alloy Aluminum Sheet

from Turkey; 2020-2022 at 5 (Cmt. 1) (Nov. 3, 2023) ("*First Review Results*").[2] It is

"unnecessary to trace specific inputs into the production of specific exports, as claimed by the

petitioners," because "the Turkish duty drawback system does not require these specific links for

duty drawback to be granted." *Id.* at 6. As the Court of Appeals for the Federal Circuit ("CAFC")

has confirmed, "{i}t does not make a difference whether the imported inputs that qualified for a

drawback were actually incorporated into goods sold in the exporter's domestic market because

the {foreign} government credited the drawback to the quantity of goods that were in fact

exported, *whatever the source of the inputs used to produce foreign goods*." *Uttam Galva*, 997

F.3d at 1198 (emphasis added).

Second, Petitioners take issue with Commerce's assignment of the per unit drawback

adjustment to all U.S. sales, "regardless of whether such sales were made pursuant to a closed

inward processing certificate." Pet. Br. at 7. While the universe of sales to which the per unit

---

[2] *See* Assan's Second Notice of Supplemental Authority at Attach. 2 (Nov. 6, 2023), ECF No. 63.

drawback adjustment is applied is not in dispute in this appeal,[3] Commerce fully considered and rejected Petitioners' repetitive arguments regarding this point in the underlying investigation and in the parallel investigation involving *Common Alloy Aluminum Sheet*. Appx007644-007645; *First Review Results* at 7. As Commerce clearly stated, "allocating the total amount of duty drawback to all sales in the U.S. sales data is preferable." Appx007644. It is also consistent with the CAFC's instruction that Commerce must consider "{t}he *entire* drawback . . . allowed 'by reason of the exportation.'" *Uttam Galva*, 997 F.3d at 1198 (emphasis added). Here, "*all* subject foil U.S. sales are made pursuant to an {inward processing certificate}." Appx86044-86045 (emphasis in original); Appx86968-86982, Appx87283-87297. It is therefore appropriate to apply the per unit adjustment calculated using Assan's closed IPC to *all* U.S. sales.

Third, Petitioners' claim that the alternate drawback methodology applied by Commerce in other recent cases is contrary to the statute's plain language because it "does not result in an adjustment based on the 'the amount' of import duty liability forgiven by the Turkish government." Pet Br. at 7. Again, Commerce and the reviewing Courts disagree. The statute provides that Commerce increase U.S. price by "the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the exportation of the subject merchandise to the United States." 19 U.S.C. § 1677a(c)(1)(B). To assess drawback eligibility pursuant to the statute, Commerce has developed, and the CAFC has affirmed, a two-pronged test, whereby a respondent must demonstrate:

> (1) that the rebate and import duties are dependent upon one another, or in the context of an exemption from import duties, that the exemption is linked to the exportation of the subject merchandise, and

---

[3] Petitioners' concede that they "did not challenge the agency's determination" regarding application of the per unit adjustment to all of Assan's U.S. sales. DOJ Br. at 12.

(2) that there are sufficient imports of the raw material to account for the duty drawback on the exports of the subject merchandise.

*Saha Thai Steel Pipe (Public) Co., Ltd. v. United States*, 635 F.3d 1335, 1340-41.

For decades, Commerce's two-pronged test has been found to satisfy the requirements of the statute, and the Turkish drawback system has, in turn, been found to satisfy the two-pronged test. *See, e.g.*, *Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi, A.S. v. United States*, 415 F.Supp.3d 1195, 1203 (Ct. Int'l Trade 2019); *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 222 F. Supp. 3d 1255, 1261 (Ct. Int'l Trade 2017).[4] As in past cases, Commerce determined in this case that Assan's use of the "Turkish {drawback system} satisfies the 'two-pronged' test." Appx007644. Again, because Assan has demonstrated that "*all* subject foil U.S. sales are made pursuant to an {inward processing certificate}," Appx86044-86045, meaning that any applicable import duties are rebated or not collected, it is appropriate to apply the per unit drawback adjustment to *all* of Assan's U.S. sales. By contrast, Petitioners' methodology severs the "statutory linkage" between exempted duties and exports, and improperly reduces the adjustment intended to "prevent a dumping margin from being created, or artificially inflated{.}" *See, e.g.*, *Habas*, 415 F.Supp.3d at 1203; *Borusan*, 222 F. Supp. 3d at 1261.

Finally, Petitioners again claim that use of the total exports under the closed IPC as the denominator is "directly contrary to the statute, which defines 'the amount' of import duty liability that has been forgiven by the Turkish government as 'by reason of the exportation of the

---

[4] Commerce has likewise repeatedly analyzed the Turkish drawback system and consistently found it to satisfy Commerce's two-pronged test. *See, e.g.*, *Welded Line Pipe From the Republic of Turkey*, 80 Fed. Reg. 61362 (Dep't Commerce October 13, 2015) (final LTFV determ.), and accompanying Issues & Decision Memorandum at 7 ("the requirements under Turkey's duty drawback program known as the Inward Processing Regime (IPR), if met by Turkish companies, satisfied the statute with respect to duty drawback adjustments under U.S. law."); *Light-Walled Rectangular Pipe and Tube From Turkey*, 69 Fed. Reg. 53675 (Dep't Commerce Sept. 2, 2004) (final LTFV determ.), and accompanying Issues & Decision Memorandum at 9 (Comment 1) ("The only limitation placed on the duty drawback adjustment is that the adjustment to the U.S. price may not exceed the amount of import duty actually paid.").

*subject merchandise* to the *United States*.'" Pet. Br. at 9 (emphasis in original). Once more, Petitioners ignore that the calculated, per unit adjustment is applied only the Assan's U.S. sales, *i.e.* subject merchandise {exported} to the United Sates. They also continue to overlook clear CAFC precedent that the adjustment be "based on the full extent of the duty drawback," regardless of "whether the imported inputs that qualified for a drawback were actually incorporated into goods sold in the exporter's domestic market." *Uttam Galva*, 997 F.3d at 1198. As Commerce has found, "any other method to reallocate specific duty exemptions on a closed IPC over a different universe of exports would likely introduce inaccuracies, as the Turkish duty drawback system does not trace the actual use of the imported input to the actual finished product that is exported." *First Review Results* at 7.

The methodology Assan advocates for in this case, and which has been applied by Commerce in other recent cases, is consistent with the statute. Petitioners' arguments to the contrary have been reasonably dismissed by Commerce and, in certain instances, the reviewing courts. There is no basis to accept Petitioners' previously rejected arguments in this case.

## III.   COMMERCE'S REQUEST FOR A VOLUNTARY REMAND SHOULD BE GRANTED AND GIVEN EXPEDITED TREATMENT

Defendant has recognized "several agency decisions in which Commerce applied the methodology proposed by Assan in this case," and has requested that the Court remand this issue "for further explanation and consideration of the ratio used for the duty drawback adjustment{.}" DOJ Br. at 1-2. Assan has consented to Defendant's motion for partial remand, which is appropriate given Commerce's conflicting treatment of the drawback adjustment with regards to Assan. However, Assan also believes this Court has sufficient support to rule without a further partial remand.

Petitioners' position that Defendant's motion be denied, seemingly based on the fact that the Defendant does not confess error, is without merit. Again, the fact that Petitioners have appealed the calculation in the *Common Alloy Aluminum Sheet* cases does not negate the inconsistency between the two cases, nor Commerce's failure to provide an explanation for using a different methodology in this case. In this circumstance, a remand is appropriate.

Moreover, in light of Defendant's motion, Assan respectfully requests that the Court expedite its determination and, if necessary, issue a partial judgment remanding the duty drawback issue to Commerce in this consolidated appeal. Pursuant to USCIT Rule 3(g), the Court may expedite and give precedence to any action that it "determines, based on motion and for good cause shown, warrants expedited treatment." Further, pursuant to USCIT Rule 54(b), "the court may direct {such} entry of a final judgment as to one or more, but fewer than all, claims . . . if the court expressly determines that there is no just reason for delay."

Assan respectfully submits that, in this case, expedited treatment is warranted and there is no just reason for delay in granting the Defendant's motion for partial voluntary remand because Commerce's drawback determination is dispositive of the result, *i.e.* whether Assan remains subject to the antidumping duty order. Specifically, this case is an appeal from the final determination in the investigation of *Certain Aluminum Foil From Turkey* in which Assan was assigned a dumping margin of 2.28 percent. Appx007669-007671. In antidumping investigations, Commerce is mandated by law to "disregard any weighted average dumping margin that is *de minimis*," *or* less than 2 percent *ad valorem*. 19 U.S.C. § 1673b(b)(3); *id.* at § 1673d(a)(4). Because Assan's calculated dumping margin was only 0.28 percent above the *de minimis* rate, a change to Commerce's duty drawback methodology to mirror the calculation

applied in the parallel case involving *Common Alloy Aluminum Sheet* would result in a margin of less than 2 percent, or *de minimis*, for Assan.

The potentially dispositive nature of this issue weighs in favor of expediting a decision on the Defendant's motion for partial voluntary remand. Indeed, judicial efficiency and fairness support expedited treatment because the first administrative review of the antidumping duty order is already underway and the second administrative review will be initiated in January 2024. Commerce's selection of Assan as a mandatory respondent in the upcoming second administrative review, and Assan's continued participation in the first administrative review, will be moot if it is assigned a *de minimis* dumping margin in the investigation and is no longer subject to the antidumping duty order. Entry of an expedited partial final judgement on the issue of duty drawback is thus in "the interest of conserving judicial and the parties' resources." *See, e.g.*, *British Steel plc v. United States*, 20 CIT 955, 958–59, 936 F. Supp. 1053, 1058–59 (1996).

Respectfully submitted,

**/s/ Leah N. Scarpelli**
Leah N. Scarpelli
Matthew M. Nolan
Jessica R. DiPietro

ArentFox Schiff LLP
1717 K Street, N.W.
Washington, DC 20006
Phone: (202) 715-8403
*Counsel to Assan Aluminyum Sanayi ve Ticaret A.S.*

December 22, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to the Court's Standard Chamber Procedure 2(b)(1), the undersigned certifies that this Supplemental Brief filed on December 22, 2023 complies with the page count limitation requirement issued in Judge Vaden's minute order, ECF No. 59. The page count for Assan's Supplemental Brief, is 10 double spaced pages.

<u>**/s/ Leah N. Scarpelli**</u>
Leah N. Scarpelli

*Counsel to Assan Aluminyum Sanayi ve Ticaret A.S.*

AFDOCS/26206000.3