NONCONFIDENTIAL

# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| ASSAN ALUMINYUM SANAYI VE TICARET A.S., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) Consol. Court ) No. 21-00616 |
| Defendant, | ) ) |
| and | ) ) |
| ALUMINUM ASSOCIATION TRADE ENFORCEMENT WORKING GROUP AND ITS INDIVIDUAL MEMBERS, ET AL., | ) ) ) ) |
| Defendant-Intervenors. | ) ) |

## <u>CONSOLIDATED PLAINTIFFS' COMMENTS ON REMAND REDETERMINATION</u>

John M. Herrmann
Paul C. Rosenthal
Joshua R. Morey
Kelley Drye & Warren LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400

Counsel to Aluminum Association
Trade Enforcement Working Group
and its Individual Members, et al.

August 5, 2025

NONCONFIDENTIAL

# **TABLE OF CONTENTS**

**Page**

I.   THE   DEPARTMENT'S   DETERMINATION   TO
     CONTINUE   OFFSETTING   ASSAN'S   COST   OF
     MANUFACTURE    WITH    HEDGING-RELATED
     GAINS IS UNLAWFUL ................................................................... 2

II.  CONCLUSION .................................................................................. 7

NONCONFIDENTIAL

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Assan Aluminyum Sanayi ve Ticaret A.S. v. United States,
   701 F. Supp. 3d 1321 (Ct. Int'l Trade 2024)......................................2-3

Assan Aluminyum Sanayi ve Ticaret A.S. v. United States,
   Slip Op. 24-56 (Ct. Int'l Trade May 8, 2024)...................................1, 2

Bonney Forge Corp. v. United States,
   560 F. Supp. 3d 1303 (Ct. Int'l Trade 2022)....................................2-3

Clearon Corp. v. United States,
   Slip Op. 15-91, 2015 Ct. Intl. Trade LEXIS 91
   (Aug. 20, 2015) ....................................................................2-3

Fischer S.A. Comercio, Industria and Agricultura v. United
   States, 38 C.I.T. 775 (2014) ..................................................5-6

Hyundai Heavy Industries Co. v. United States,
   485 F. Supp. 3d 1380 (Ct. Int'l Trade 2020).......................................6

## Statutes

19 U.S.C. § 1677b(f)(1)(A) ...........................................................4

19 U.S.C. § 1677f(i)(3)(A) ...........................................................2

NONCONFIDENTIAL

## Other Authorities

Final Results Of Redetermination Pursuant To Court
      Remand: Assan Aluminyum Sanayi ve Ticaret A.S. v.
      United States, Consol. Court No. 21-00616,
      (Dep't Commerce Sept. 5, 2024) (Remand PR 15)
      (ECF No. 75) ("Remand Results") ........................................... *passim*

Phosphor Copper From the Republic of Korea:
      Final Affirmative Determination of Sales at Less Than
      Fair Value and Negative Final Determination of Critical
      Circumstances, 82 Fed. Reg. 12,433 (Dep't Commerce
      Mar. 3, 2017), and accompanying Issues and Decision
      Memorandum (Feb. 27, 2017).............................................................5-6

NONCONFIDENTIAL

## Glossary

| Acronym\Abbreviation | Item |
|---|---|
| Assan | Assan Aluminyum Sanayi ve Ticaret A.S. |
| Consolidated Plaintiffs | Aluminum Association Trade Enforcement Working Group and its individual members, Gränges Americas Inc., JW Aluminum Company, and Novelis Corporation |
| Consol. Pls.' Rule 56.2 Mot. J. on the Agency R. (May 23, 2022) | Motion for Judgment on Agency Record 56.2 and Memorandum of Law in Support of Consolidated Plaintiffs (May 23, 2022) |
| Department | U.S. Department of Commerce |
| Remand Order | Assan Aluminyum Sanayi ve Ticaret A.S. v. United States, Slip Op. 24-56 (Ct. Int'l Trade May 8, 2024) (Appx1-39) |
| Remand Results | Final Results Of Redetermination Pursuant To Court Remand: Assan Aluminyum Sanayi ve Ticaret A.S. v. United States, Consol. Court No. 21-00616 (Dep't Commerce Sept. 5, 2024) (Remand PR 15) (ECF No. 75) (Appx126-161) |

NONCONFIDENTIAL

## <u>CONSOLIDATED PLAINTIFFS' COMMENTS ON<br>REMAND REDETERMINATION</u>

These comments, filed on behalf of the Aluminum Association Trade Enforcement Working Group and its individual members, Gränges Americas Inc., JW Aluminum Company, and Novelis Corporation (collectively, "Consolidated Plaintiffs"), challenge aspects of the U.S. Department of Commerce's (hereinafter, "the Department") final results of redetermination pursuant to Court remand.  <u>See</u> <u>Final Results Of Redetermination Pursuant To Court Remand: Assan Aluminyum Sanayi ve Ticaret A.S. v. United States</u>, Consol. Court No. 21-00616,[1] (Dep't Commerce Sept. 5, 2024) (Remand PR 15)[2] (ECF No. 75) (Appx126-161).   While the Department's redetermination concerning the duty drawback issue and the raw material premium issue are lawful, the Department's decision to continue including Assan

---

[1]    Slip Op. 24-56 (Ct. Int'l Trade May 8, 2024) (Appx1-39).

[2]    Additionally, documents in the administrative record compiled in connection with the Department's original determination are cited based on the Appx number assigned in the joint appendix filed with this Court on June 21, 2023 (ECF No. 53).  Documents in administrative record compiled in connection with the Department's remand proceeding are cited based on the Appx number assigned in the remand joint appendix that will be filed with the Court following briefing.

NONCONFIDENTIAL

Aluminyum Sanayi ve Ticaret A.S.'s ("Assan") hedging-related gains as an offset to the cost of manufacture is unlawful.

**I.    THE DEPARTMENT'S DETERMINATION TO CONTINUE OFFSETTING ASSAN'S COST OF MANUFACTURE WITH HEDGING-RELATED GAINS IS UNLAWFUL**

Both Assan and the Department have conceded that Assan's hedging activities at least partly relate to its sales of finished goods. As the Court noted in the Remand Order, Assan "concedes that its hedging is in some way related to the sales price of its finished goods" and "that it does hedge — at least in part — against the risk imposed by mark-to-market accounting of its raw material inventory." Appx20. Further, Defendant "acknowledge{d} that the record may support the Aluminum Association's view but argues that the record also supports Commerce's view." Appx20.

While Consolidated Plaintiffs raised these concessions in their comments on Commerce's draft remand,[3] the Department's Remand Results do not explicitly address them contrary to 19 U.S.C. § 1677f(i)(3)(A). See Appx 156-160; see also Assan Aluminyum Sanayi ve Ticaret A.S. v. United States, 701 F. Supp. 3d 1321, 1331, 1333 (Ct. Int'l

---

[3]    Appx108.

NONCONFIDENTIAL

Trade 2024) (remanding in part for Commerce's failure to address two of the Association's "relevant arguments"); <u>Bonney Forge Corp. v. United States</u>, 560 F. Supp. 3d 1303, 1310 (Ct. Int'l Trade 2022) ("The Federal Circuit has thus found that the Court of International Trade properly remanded determinations when Commerce 'fail{ed} to consider all relevant arguments' made by the parties.") (quoting <u>Altx, Inc. v. United States</u>, 370 F.3d 1108, 1119-20 (Fed. Cir. 2004)); <u>Clearon Corp. v. United States</u>, Slip Op. 15-91 at 56-57, 2015 Ct. Intl. Trade LEXIS 91, at *92 (Aug. 20, 2015) ("Arch raised this last point in its comments on the Draft Remand, and it is an argument of cogent materiality that Commerce failed to address, requiring remand for that reason as well.") (citing, <u>e.g.</u>, <u>United States v. Nova Scotia Food Products Corp.</u>, 568 F.2d 240, 252 (2d Cir. 1977) (stating that "{i}t is not in keeping with the rational {agency} process to leave vital questions, raised by comments which are of cogent materiality, completely unanswered").

Further, Consolidated Plaintiffs' comments on the Department's draft remand redetermination explained "that the net hedging gains should be included in the interest expense calculation because of how the hedging transactions are presented in Assan's cash flow statement."

NONCONFIDENTIAL

Appx159 (citing Appx109-110).    The Department dismisses this argument because "Assan recorded the net gains on hedging activity that were triggered by its raw material purchases as part of cost of goods sold in its <u>audited income statement</u>."    Appx159 (emphasis in original).  Because of Assan's treatment of hedging gains on its income statement, the Department claims it must classify those gains as part of the cost of manufacture in order to comply with the statute.  <u>See</u> 19 U.S.C. § 1677b(f)(1)(A) (stating that "{c}osts shall normally be calculated based on the records of the exporter or producer of the merchandise" if those records meet certain criteria).

Assan's normal records, however, include both its audited income statement and its audited cash flow statement.  The Department has not explained why Assan's audited income statement is more authoritative that Assan's audited cash flow statement.  Indeed, as Consolidated Plaintiffs explained, [

]

<u>See</u> Consol. Pls.' Rule 56.2 Mot. J. on the Agency R. at 24-25 (May 23, 2022) (ECF No. 27).  [

NONCONFIDENTIAL

]    <u>See</u>

Appx85883; <u>see</u> <u>also</u> Appx82694.  [

]  <u>See</u> Appx92075; Appx85910. Thus, the

Department's explanation is not supported by substantial evidence and

fails to address a key aspect of the problem.

Finally, the Department attempts to distinguish the instant case

from <u>Phosphor Copper from Korea</u>[4] and <u>Fischer</u>[5] – two cases in which

Commerce classified hedging gains within interest expenses instead of

as an offset to the cost of manufacture.  See Appx158; <u>see</u> <u>also</u> Appx109.

The Department's analysis of this issue is speculation.  In particular,

---

[4]    <u>See</u> <u>Phosphor Copper From the Republic of Korea: Final Affirmative</u>
<u>Determination of Sales at Less Than Fair Value and Negative Final</u>
<u>Determination of Critical Circumstances</u>, 82 Fed. Reg. 12,433 (Dep't
Commerce Mar. 3, 2017), and accompanying Issues and Decision
Memorandum at 11-12 (Comment 2) (Feb. 27, 2017) (the Department
explained that because the respondent "incurs gains and losses on
derivative transactions," and the respondent "uses copper as the main
input in producing the merchandise under consideration," a material
that "is a commodity metal traded on the London Metal Exchange
(LME)," it "is reasonable to include the full amount of such gains and
losses in {the respondent's} financial expense rate calculations").

[5]    <u>See</u> <u>Fischer S.A. Comercio, Industria and Agricultura v. United</u>
<u>States</u>, 38 C.I.T. 775, 784-87 (2014) (hereinafter, "<u>Fischer</u>") (upholding
the Department's determination that "including all incurred hedging
losses in Fisher's financial expense ratio accurately depicted 'how the
entity as a whole manages its overall foreign currency exposure and
risk associated with interest rate variations'") (citation omitted).

the Department states: "the gains and losses on derivatives at issue in

<u>Phosphor Copper from Korea</u> and the hedging losses at issue in <u>Fischer</u>

<u>would have been likely</u> recorded in each respondent's income statement

as part of interest expense, instead of cost of manufacturing . . . ."

Appx158.   The Department, however, "may not base its decision on

speculation."   <u>See</u> <u>Hyundai Heavy Industries Co. v. United States</u>, 485

F. Supp. 3d 1380, 1399 (Ct. Int'l Trade 2020) (citing <u>Lucent Techs., Inc.</u>

<u>v. Gateway, Inc.</u>, 580 F.3d 1301, 1327 (Fed. Cir. 2009)).

Further, the Department contends that <u>Fischer</u> concerned

"amounts for 'unrealized' hedging gains and losses" and "{t}he terms

'unrealized' or 'realized' when referring to various income or expense

items are not associated with the cost of goods sold line item on an

income statement." Appx159. The very hedging gains at issue in this

action, however, involve these same terms.   For example, Assan's

hedging gains include the balance of accounts **[**

**]**, which record "the profit or loss from <u>realized</u> positions

from concluded hedging related transaction."   Appx87808 (emphasis

added).   Indeed, the names of the some of the account at issue here

include the term "realized" – <u>e.g.</u>, "RM hedge/profit loss <u>realized</u> (metal

NONCONFIDENTIAL

premium) – account **[                    ]**" and "metal hedge profit/loss

realized – account **[                ]**." Id. (emphasis added).

## II. **CONCLUSION**

For the reasons discussed above, the Court should remand this

issue and instruct the Department to include hedging gains within its

calculation of Assan's interest expense ratio.


Respectfully submitted,

/s/ John M. Herrmann
JOHN M. HERRMANN
PAUL C. ROSENTHAL
JOSHUA R. MOREY
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, D.C.  20007
(202) 342-8400
jherrmann@kelleydrye.com
prosenthal@kelleydrye.com
jmorey@kelleydrye.com


Counsel to Consolidated Plaintiffs

Dated:  August 5, 2025

# CERTIFICATE OF COMPLIANCE
# WITH COURT OF INTERNATIONAL TRADE
# STANDARD CHAMBERS PROCEDURES

Pursuant to the Court of International Trade Standard Chambers procedures, counsel for the Aluminum Association Trade Enforcement Working Group and its individual members, Gränges Americas Inc., JW Aluminum Company, and Novelis Corporation (collectively, "Consolidated Plaintiffs") certifies that Consolidated Plaintiffs' Comments on Remand Redetermination contain <u>1300</u> words, including footnotes. The word count certification is made in reliance on the word-count feature contained in Microsoft 365 – Enterprise.

Respectfully submitted,

<u>/s/ John M. Herrmann</u>
JOHN M. HERRMANN
PAUL C. ROSENTHAL
JOSHUA R. MOREY
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, D.C.  20007
(202) 342-8400
prosenthal@kelleydrye.com
jherrmann@kelleydrye.com
jmorey@kelleydrye.com

Counsel to Consolidated Plaintiffs

Dated:  August 5, 2025