# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

|  |  |
|---|---|
| ASSAN ALUMINYUM SANAYI VE TICARET A.S., | ) ) ) ) |
| *Plaintiff*, | ) **<u>Non-Confidential</u>** ) **<u>Version</u>** |
| v. | ) ) |
| THE UNITED STATES, | ) Consol. Court No. 21-00616 ) |
| *Defendant*, | ) **Business Proprietary** ) **Information Deleted** ) **from page: 17.** |
| ALUMINUM ASSOCIATION TRADE ENFORCEMENT WORKING GROUP AND ITS INDIVIDUAL MEMBERS, et al., | ) ) ) ) |
| *Defendant-Intervenors*. | ) ) |

## ASSAN ALUMINYUM SANAYI VE TICARET A.S.'S REPLY COMMENTS ON REMAND REDETERMINATION

Leah N. Scarpelli
Matthew M. Nolan
Jessica R. DiPietro

ARENTFOX SCHIFF LLP
1717 K Street, NW
Washington, D.C. 20006
Tel: (202) 857-6013
Fax: (202) 857-6395
Email: <u>leah.scarpelli@afslaw.com</u>

September 10, 2025

AFSDOCS:303684113.1

# TABLE OF CONTENTS

**Page**

I.  SUMMARY OF THE ARGUMENT ................................................. 2

II. ARGUMENT ..................................................................... 4

    A.  COMMERCE'S FAILURE TO GRANT ASSAN FULL
        DRAWBACK ADJUSTMENT TO WHICH IT IS
        ENTITLED IS AN ABUSE OF DISCRETION ..................... 4

    B.  DIRMATMP SHOULD BE BASED ON ASSAN'S
        ACTUAL REPORTED COSTS ............................................. 7

    C.  THE HEDGING OFFSET IS SUPPORTED BY
        RECORD EVIDENCE ........................................................ 14

III. CONCLUSION .................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*,
  Consol. Court No. 21-00246; slip op. 24-44 (Ct. Int'l Trade
  Apr. 11, 2024), published at 701 F. Supp. 3d 1321 (Ct.
  Int'l Trade 2024) ................................................................................... 3

*Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*,
  No. 21-616, slip. op. 24-56 (Ct. Int'l Trade May 8, 2024),
  2024 WL 2044061 ................................................................ 2, 11, 15

*Dongkuk S&C Co. v. United States,*
  600 F. Supp. 3d 1331 (Ct. Int'l Trade 2022), *appeal filed*
  No. 23-1419 (Fed. Cir. Jan. 23, 2023)............................................ 12, 13

*Loper Bright Enterprises v. Raimondo,*
  144 S. Ct. 2244 (2024)................................................................... 5, 11

*Thai Plastic Bags Industries v. United States,*
  853 F. Supp. 2d 1267, (Ct. Int'l Trade 2012), *aff'd*, 746
  F.3d 1358 (Fed. Cir. 2014) ............................................................ 11, 12

*Tosçelik Profil ve Sac Endüstrisi A.Ş. v. United States,*
  348 F. Supp. 3d 1321 (Ct. Int'l Trade 2018).......................................... 7

*U.S. Steel Corp. v. United States*,
  179 F. Supp. 3d 1114 (Ct. Int'l Trade 2016).......................................... 9

*Uttam Galva Steels Ltd. v. United States*,
  997 F.3d 1192 (Fed. Cir. 2021) ...................................................... 3, 6

**Federal Statutes**

19 U.S.C. § 1677a(c)(1)(B) ............................................................ 5

19 U.S.C. § 1677b(f)(1)(A) ............................................................ 8

**Administrative Determinations**

*Certain Aluminum Foil From the Republic of Turkey: Final
Affirmative Determination of Sales at Less Than Fair
Value*, 86 Fed. Reg. 52880 (Dep't Commerce Sep. 23,
2021), and accompanying Issues and Decision
Memorandum .......................................................................... 16

**Other Authorities**

Uruguay Rounds Agreement Act, S. Rep. No. 103-412 (1994) ................. 9

# GLOSSARY

| Description | Acronym |
|---|---|
| Common Alloy Aluminum Sheet from Turkey | CAAS |
| Control Numbers | CONNUM |
| Cost of Goods Sold | COGS |
| Cost of Manufacturing | COM |
| Generally Accepted Accounting Principles | GAAP |
| Government of Turkey | GOT |
| Inward Processing Certificate | IPC |
| London Metal Exchange | LME |
| Period of Investigation | POI |
| Raw Material Premiums | DIRMATMP |
| Systems Applications and Products in Data Processing | SAP |

## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| ASSAN ALUMINYUM SANAYI VE TICARET A.S., | ) ) ) ) |
| *Plaintiff,* | ) **Non-Confidential** ) **Version** |
| v. | ) ) |
| THE UNITED STATES, | ) Consol. Court No. 21-00616 ) |
| *Defendant,* | ) **Business Proprietary** ) **Information Deleted** |
| ALUMINUM ASSOCIATION TRADE ENFORCEMENT WORKING GROUP AND ITS INDIVIDUAL MEMBERS, et al., | ) **from page: 17.** ) ) ) ) |
| *Defendant-Intervenors.* | ) ) |

## ASSAN ALUMINYUM SANAYI VE TICARET A.S.'S REPLY COMMENTS ON REMAND REDETERMINATION

Pursuant to the U.S. Court of International Trade's opinion and order dated May 8, 2024, ECF No. 74, Plaintiff Assan Aluminyum Sanayi ve Ticaret A.S. ("Assan") provides the following reply comments in response to the Comments on Remand Results filed by Petitioners ("Pet. Cmts."), ECF Nos. 83 and 84, and the Response Comments filed by Defendant ("Def. Cmts."), ECF No. 87, regarding the U.S.

AFSDOCS:303684113.1

Department of Commerce's ("Commerce") Final Results of

Redetermination Pursuant to Court Remand filed on September 5,

2024, ECF No. 75 ("*Remand Redetermination*"), Appx126-161. The

*Remand Redetermination* was issued pursuant to the Court's decision,

*Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*, No. 21-616,

slip. op. 24-56 (Ct. Int'l Trade May 8, 2024) ("*Remand Order*"), Appx1-

39.[1] These reply comments are timely filed pursuant to the Court's

November 5, 2024 order amending the scheduling order, ECF No. 86

## I.    SUMMARY OF THE ARGUMENT

In these comments relating to Commerce's determination in

aluminum foil from Türkiye ("*Foil*"), Assan responds to Defendant's

comments regarding the duty drawback adjustment and raw material

premiums, as well as Petitioners' comments regarding Assan's hedging

revenues. Def. Cmts. at 8-16; Pet. Cmts. at 1-5.

Regarding duty drawback, Commerce claims there is no basis to

reopen the record in this case to accept evidence of inward processing

certification ("IPC") closure, despite doing so in the parallel

investigation involving *Common Alloy Aluminum Sheet from Turkey*

---

[1] Available at 2024 WL 2044061.

AFSDOCS:303684113.1

("*CAAS*"), in which Assan is also a mandatory respondent. *Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*, Consol. Court No. 21-00246; slip op. 24-44 (Ct. Int'l Trade Apr. 11, 2024), published at 701 F. Supp. 3d 1321 (Ct. Int'l Trade 2024). Commerce should treat IPCs in *CAAS* and *Foil*, which have overlapping periods of investigation ("POI") in the same way. Its failure to do so unlawfully violates the statutory requirement that "{t}he *entire* drawback {be} allowed'" *Uttam Galva Steels Ltd. v. United States*, 997 F.3d 1192, 1198 (Fed. Cir. 2021) (emphasis added).

Regarding raw material premiums ("DIRMATMP"), Commerce provides no factual basis for ignoring Assan's reported CONNUM-specific aluminum premium costs in the total cost of manufacturing. Assan's reported costs best account for physical differences in the raw materials used to produce Assan's end products and Commerce's flawed analysis continues to overlook fundamental cost differences related to yield loss for specific CONNUMs. There is no basis for Commerce to ignore costs reported in Assan's books and records, which demonstrate these differences, simply because its SAP system did not have the functionality to provide the information in the format Commerce

AFSDOCS:303684113.1

demand. Assan's books and records were otherwise found to "reasonably reflect the cost to produce and sell the merchandise," *Remand Redetermination* at 13, Appx138, and should have been used to calculate DIRMATMP.

Regarding hedging, Petitioners' arguments do not undermine Commerce's determination and additional explanation regarding Assan's hedging transactions. Commerce has sufficiently explained its inclusion of net hedging gains in the calculation of Assan's cost of production, which is supported by the record.

## II.   ARGUMENT

### A. Commerce's Failure to Grant Assan Full Drawback Adjustment to Which It Is Entitled Is An Abuse of Discretion

As detailed in Assan's opening comments, Commerce's disparate treatment of Assan's IPCs results in inconsistencies between the appeal involving *CAAS* and this case involving *Foil*, despite there being no basis to treat Assan's IPCs in these two cases differently. Assan Aluminyum Sanayi ve Ticaret A.S.'s Comments on Remand Redetermination at 2- 3, 6-10 (Oct. 17, 2024), ECF Nos. 81 and 82 ("Assan's Cmts."). Commerce, however, declines to grapple with the disparate treatment of Assan's IPCs in the two appeals involving *CAAS*

AFSDOCS:303684113.1

and *Foil*, noting only that "there was no need to reopen the record on remand" in *Foil*. Def. Cmts. at 4. Though, as Defendant notes, Commerce has discretion in this area, *id.* at 3-4, the Court may still find that Commerce has abused that discretion. Indeed, this is more true than ever with the U.S. Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2262-63 (2024), which held that Courts must "exercise{e} independent judgment in determining the meaning of statutory provisions" and "independently interpret the statute and effectuate the will of Congress subject to constitutional limits," rather than simply defer to agency action.

Here, the drawback statute provides:

> The price used to establish export price and constructed export price shall be . . . increased by . . . the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the exportation of the subject merchandise to the United States{.}

19 U.S.C. § 1677a(c)(1)(B). Having re-opened the record in *CAAS* and enabling Assan to provide closure documentation issued by the Government of Türkiye ("GOT") for all IPCs used during the POI, Commerce subsequently found that it was appropriate "to use IPCs that

AFSDOCS:303684113.1

are closed outside the {POI} for purposes of calculating duty drawback adjustments when sufficient evidence exists on the record to demonstrate their closure." *CAAS 2nd Remand Redetermination* at 8, Appx201, it is unreasonable for Commerce to maintain that Assan did not receive a drawback adjustment under the same IPC in this parallel proceeding involving *Foil*. Request to Reopen the Record on Remand at 2-3 (Aug. 12, 2024), Appx41-42 ("{T}he closure documentation Assan Group seeks to submit to Commerce in this investigation relates to the exact same IPC considered in the *CAAS* investigation remand and first administrative review, which was accepted by Commerce in both of those proceedings.").

As Commerce found in *CAAS*, inclusion of the closed IPC in Commerce's calculation is necessary to "fulfill{} Commerce's statutory requirement to calculate fair and accurate dumping margins." *CAAS 2nd Remand Redetermination* at 14, Appx207. Excluding an IPC that Commerce has recognized as closed in other proceedings is unreasonable and abuse of discretion violating the plain language of the statute, which "requires an adjustment to 'export price' *based on the full extent of the duty drawback*." *Uttam Galva*, 997 F.3d at 1197 (emphasis

6

added). Commerce also fails address the Court's explicit finding that "exports that are in different administrative review periods that occur on the same {IPC} are entitled to the same adjustment." *CAAS 2nd Remand Redetermination* at 7 n.40, Appx200 (quoting *Tosçelik Profil ve Sac Endüstrisi A.Ş. v. United States*, 348 F. Supp. 3d 1321, 1327 (Ct. Int'l Trade 2018)); *see also, Remand Redetermination* at 21-22, Appx146-147.

Finally, despite Commerce's claims, reopening the record does not "contradict{} important principles of finality, {nor} discourage{} compliance." Def. Cmts. at 9. As detailed above, there is no statutory basis to exclude closed-IPC sales from Commerce's drawback calculation.

## B. DIRMATMP Should Be Based on Assan's Actual Reported Costs

In its comments, Commerce maintains that "{s}ubstantial evidence supports Commerce's factual determination that cost differences associated with the raw material premium are unrelated to the physical characteristics." *Id.* at 12. However, Commerce continues to provide no evidentiary support for its departure from Assan's normal

AFSDOCS:303684113.1

books and records in weight averaging the reported raw material

aluminum premium costs for all CONNUMs.

The statute provides, and all parties agree, that costs are

normally calculated based on the records of the exporter of the

merchandise, as long as the records are kept in accordance with GAAP

and reasonably reflect costs associated with the production and sale of

the merchandise under investigation. 19 U.S.C. § 1677b(f)(1)(A);

Defendant's Response to Plaintiffs and Consolidated Plaintiffs' Rule

56.2 Motion for Judgment on the Agency Record at 28 (Aug. 5, 2022),

ECF Nos. 38 and 39; Consolidated Plaintiffs' Memorandum of Law in

Opposition to Plaintiff's Rule 56.2 Motion for Judgment on the Agency

Record at 22 (Aug. 8, 2022), ECF Nos. 40 and 41. If these conditions are

met, Commerce is required to rely on a respondent's actual books and

records and its reported costs. Assan's costs were recorded in

accordance with Turkish GAAP, and actual recorded production costs

down to the specific production order and raw materials consumed per

order were reported. Plaintiff's Memorandum of Law in Support of

Motion for Judgment on the Agency Record Pursuant to Rule 56.2 at 33

(May 23, 2022), ECF Nos. 29 and 30 ("Assan Br."). Yet, Commerce

AFSDOCS:303684113.1

maintains that "reported costs for the raw material premium did not reasonably reflect its costs to produce products identified by different product control numbers." Def. Cmts. at 12.

Commerce's conclusion that "cost differences associated with the raw material premium are unrelated to the physical characteristics," *id.*, is contradicted by the record, which demonstrates physical differences in the CONNUMs produced – namely the composition of raw materials used (*i.e.*, scrap vs. finished aluminum sheet). Assan Br. at 33-34. Commerce's restriction of the definition of physical characteristics to only "gauge, coating, width, casting method, alloy, temper, and surface finish," *Remand Redetermination* at 9, Appx134, is unreasonable and, in any event, does not override the agency's strong preference for relying on the actual books and records used by a respondent to report costs unless the cost allocation is distortive. *See, e.g., U.S. Steel Corp. v. United States*, 179 F. Supp. 3d 1114, 1132-33 (Ct. Int'l Trade 2016); Uruguay Rounds Agreement Act, S. Rep. No. 103-412, at 75 (1994) (noting the requirement that Commerce determine "as closely as possible the costs that most accurately reflect the resources actually used in the production of the merchandise in question.").

9

Assan provided detailed explanations regarding how differing compositions of raw materials used in production (scrap vs. finished aluminum sheet) affected CONNUM costing. These raw materials are incorporated as physical characteristics of each CONNUM and are reflected in Assan's cost accounting system which is in accordance with Turkish GAAP. *See* Assan and Kibar's Response to Section D Questionnaire at D-47 (Jan. 19, 2021), Appx82636; Assan and Kibar's Response to Questions 2a, 2b, 2c, and 4 of the May 4, 2021 Section D Fifth Supplemental Questionnaire at Exh. S10D-5 (May 14, 2021), Appx89108-89112; Assan and Kibar's Response to Questions 1, 2d, and 3 of the May 4, 2021 Section D Fifth Supplemental Questionnaire at Exh. S10D-10 (May 17, 2021), Appx89170-89171 ("May 17 Supp. Resp."). Commerce's rejection of Assan's reported CONNUM costs, which demonstrate that the composition of metal costs vary by CONNUM, dummies down the calculation and results in cost distortions.

Though Commerce directs the Court to not "second-guess {its} technical expertise" in making the "complex economic and accounting decision" to ignore Assan's reporting, Def. Cmts. at 13 (citation

AFSDOCS:303684113.1

omitted), the Supreme Court's directive in *Loper Bright* requires the Court to do exactly that in determining the "best reading . . . the court would have reached if no agency were involved." *Loper Bright*, 144 S. Ct. at 2266 (citation omitted). The correct interpretation is "the one the court, after applying all relevant interpretive tools, concludes is best," *id.*, not the one that designates itself without factual support or analysis of why Assan's reported CONNUM costs are actually distortive. Commerce remains unable to adequately respond to the Court's most basic inquiries regarding its decisions in this regard. For example, in the *Remand Order*, the Court explicitly directed Commerce to explain its failure to consider "related differences in other production costs, such as labor." *Remand Order* at 28, Appx28. But Commerce cannot. Recitation of the fact that various "raw material input types (*i.e.*, primary aluminum, aluminum sheet, or scrap) *can* be used" in production, Def. Cmts. at 14 (emphasis added), does not change the fact that certain inputs "are easier to convert to foil than others." *Remand Order* at 28, Appx28.

Finally, *Thai Plastic Bags Industries v. United States* remains unable to support Commerce's methodology in this case. Def. Cmts. at

11

15 (citing 853 F. Supp. 2d 1267 (Ct. Int'l Trade 2012), *aff'd*, 746 F.3d 1358, 1362 (Fed. Cir. 2014) ("*Thai Bags*"). In *Thai Bags*, Commerce specifically found that the respondent's reported labor and overhead costs "did not 'reasonably reflect' production costs" and the Court of Appeals for the Federal Circuit noted that there was "no evidence that {reported} labor and overhead records were kept in accordance with the GAAP of Thailand." *Thai Bags*, 746 F.3d. at 1365. Additionally, Commerce found that CONNUMs with very similar physical characteristics had substantially different costs, and the respondent failed to adequately explain what accounted for those differences other than a "slight difference in the percentage of color concentrate contained in each product." *Id.* at 1366 (citation omitted). Likewise, in *Dongkuk S&C Co. v. United States*, "there was virtually no difference in the cost associated with the different dimensions and grades of steel plate purchases used to produce the CONNUMs analyzed." Def. Cmts. at 16 (citing 600 F. Supp. 3d 1331, 1336 (Ct. Int'l Trade 2022), *appeal filed* No. 23-1419 (Fed. Cir. Jan. 23, 2023)). In *Dongkuk*, in other words, the cost differences were fully attributed to timing difference, not the physical characteristics of the raw materials used to produce the

12

finished product. 600 F. Supp. 3d at 1336. Here, by contrast, Assan has demonstrated that the value of *each* material input is different, consistent with its physical attributes. May 17 Supp. Response at Exh. S10D-10, Appx006780-Appx006781. A foil product that is manufactured using more scrap (as opposed to more finished aluminum sheet), for example, has a lower per unit raw material premium cost, but this is offset by higher labor and overhead costs necessitated by the additional manufacturing required when more scrap is used. *Id.*

Though Commerce concedes that "calculate{ion of} product-specific yield losses" may be appropriate, Def. Cmts. at 16, it claims that Assan has not provided the information enabling it to do so. As Assan has repeatedly explained, it cannot include the separate fields in the manner Commerce requested because the cost component breakdown in SAP limits the defined fields for raw materials to LME, raw material premium, and other costs, and there is no functionality to separate cost components "as the SAP structure does not summarize from multiple layers of production and costing data." May 17 Supplemental Response at 15, Appx89136. However, SAP's functionality restrictions do not enable Commerce to ignore clear yield-loss differences in its calculation.

13

Assan's actual recorded production costs down to the specific production order and raw materials consumed per order were provided on the record and enable Commerce to accurately calculate DIRMATMP. *Id.* at 11, Appx89132.

Commerce need not have looked beyond Assan's "cost accounting system, {which} calculates costs specific to each production order based on the specific raw material consumption and conversion costs incurred for that order in that period (month)," as well as "the actual consumption of inputs, including consumption of purchased semi-finished goods, such {as} purchased aluminum sheet." *Id.* Commerce's continued rejection in the *Remand Redetermination* of Assan's reported CONNUM costs has no basis in the record and should be rejected by the Court.

## C. The Hedging Offset Is Supported by Record Evidence

Petitioners' arguments do not undermine Commerce's decision in the *Remand Redetermination* to continue to "offset treat the net hedging gains as part of Assan's reported cost of manufacturing (COM)

with Assan's net hedging gains" complies with the Court's *Remand Order*. *Remand Redetermination* at 16, Appx141.

First, Petitioners' maintain that Assan's hedging is "*in some way related to the sales price of its finished goods*." Pet. Cmts. at 2 (emphasis added) (citation omitted). However, as Assan has detailed, the LME hedge in Assan's purchases of raw materials are set independently and during a separate period of time than the LME hedge in Assan's sales price for finished products. Indeed, Assan's hedges are linked to specific raw material purchases. Assan and Kibar Response to Questions 5 through 10 of the April 9, 2021 Section D Fourth Supplemental Questionnaire at 1-6, Exhs. S9D-7 – S9D-16 (Apr. 15, 2021), Appx87808-87813, 87820-88263; May 17 Supp. Resp. at 1-9, Exhs. S10D-6 – S10D-10, Appx89122-89130, 89138-89171. There is no corresponding trace to any specific sales contract or invoice because the raw material hedge is unrelated to Assan's sales of finished goods or sales revenue. Though any purchase of raw materials is *in some way* related to an eventual sale, the hedge could not occur on a specific sales

15

transaction, because that transaction would not have even been booked at the time of the raw material purchase.

Second, Petitioners' allege that Assan "does hedge — *at least in part* — against the risk imposed by market-to-market accounting of its raw material inventory." Pet. Cmts. at 1-2 (emphasis added) (citation omitted). As Assan has explained, a mark to market gain/loss is determined by the additional loss and gain the company needs to post to restate the inventory to the current value. The need for Assan's hedges is to eliminate the risk of fluctuations in the metal cost on the value of its raw material metal inventories. *Certain Aluminum Foil From the Republic of Turkey: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 52880 (Dep't Commerce Sep. 23, 2021), and accompanying Issues and Decision Memoranda at 41, Appx007657. This is separate from protecting against the declining price of finished goods, as Petitioners contend.

Finally, Petitioners' alleged that Commerce has not explained its reliance on Assan's audited income statement as more authoritative than Assan's audited cash flow statement. Pet. Cmts. at 3. However, this argument ignores that the Assan's net hedging gains and losses are

16

recorded as a part of cost of goods sold ("COGS") in Assan's audited

financial statements. Assan and Kibar Response to Section D

Questionnaire at Exh. D-16 (Jan. 19, 2021), Appx82691-82706.

Specifically, accounts [

          ] are grouped under COGS in column E titled

"P&L_Mapping." *Id.* at Exh. D-21, Appx82806 – 82814.The sum of

accounts labeled COGS is [                    ]. *Id.*, Appx82814. This ties

to "Assan Alüminyum 2019 Solo COGS" line in Assan's Jan. 19 DQR at

Exhibit D-16 in after adding the reconciling item of [               ]. *See*

Assan and Kibar's Response to the March 8, 2021 Section D Second

Supplemental Questionnaire at Exh. S5D-33 (Mar. 29, 2021),

Appx85891-85892.  The recording of Assan's raw material hedging

gains as COGs is approved by Assan's management and its auditor,

PWC – one of the world's largest accounting firms. Assan, Kibar and

Ispak's Rebuttal Case Brief at 14 (Aug. 12, 2021), Appx91371.

Commerce's reliance on Assan's audited financial reporting is therefore

reasonable and appropriate.

    Indeed, Commerce *must* "calculate costs based on a respondent's

normal books and records if they are kept in accordance with home

country GAAP and reasonably reflect the costs associated with the production and sale of the merchandise," as is the case here. *Remand Redetermination* at 17, Appx142.

## III.    CONCLUSION

For the reasons set forth above, Assan respectfully requests that the Court determine the Commerce's *Remand Redetermination* is not supported by substantial evidence and other not in accordance with law with regards to duty drawback and raw material premiums and remand to Commerce with regards to these issues. We also respectfully request that the Court sustain Commerce's *Remand Redetermination* as it relates to the treatment of Assan's hedging revenues.

Respectfully submitted,

**/s/ Leah N. Scarpelli**
Leah N. Scarpelli
Jessica R. DiPietro
Matthew M. Nolan

*Counsel for Assan Aluminyum Sanayi ve Ticaret A.S.*

September 10, 2025

18

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to the Court's Standard Chamber Procedure 2(b)(1), the undersigned certifies that Assan's Reply Comments on the Final Remand Redetermination re-filed on September 10, 2025 complies with the word limitation requirement. The word count for Plaintiff's Comments, as computed by ArentFox Schiff LLP's word processing system is 3,143.

 **/s/ Leah N. Scarpelli**
Leah N. Scarpelli